UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Eboni Marshall Turman,<br><br>      Plaintiff,<br><br>    v.<br><br>The Abyssinian Baptist Church & Valerie S. Grant,<br><br>      Defendants. | 23 Civ. 11304 (DEH)<br><br>**OPINION<br>AND ORDER** |

DALE E. HO, United States District Judge:

  On December 29, 2023, Plaintiff Reverend Doctor Eboni Marshall Turman initiated this employment discrimination and breach of contract action against The Abyssinian Baptist Church and Valerie S. Grant (collectively, "Defendants"). Dr. Marshall Turman, who applied to be Abyssinian's senior pastor, alleges that Defendants ultimately declined to consider her for the position based on her gender, in violation of New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.* and New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107 *et seq.* Am. Compl. ¶ 1, ECF No. 14. She also claims that, by eliminating her from consideration for the position because she is a woman, Abyssinian breached an implied contract—as stated in the Church's by-laws and job posting[1]—not to discriminate against applicants based on, *inter alia*, their gender. *Id.* ¶¶ 74-84. Defendants now move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure,[2] to dismiss Dr. Marshall Turman's

---

[1] In her opposition, Dr. Marshall Turman appears to clarify that her contract claim is predicated only on the antidiscrimination statement from the job description, not on any representation made in the by-laws. Pl.'s Mem. Opp'n Mot. to Dismiss ("Pl.'s Opp'n") 15, ECF No. 20. However, in the interest of completeness, the Court considers both the job description and the by-laws.

[2] All references to Rules are to the Federal Rules of Civil Procedure. In all quotations from cases, the Court omits citations, alterations, emphases, internal quotation marks, and ellipses, unless otherwise indicated.

Amended Complaint for failure to state a claim. Mot. to Dismiss, ECF No. 17. For the reasons explained below, Defendants' Motion to Dismiss is **GRANTED**.

## BACKGROUND

The following facts are taken from Plaintiff's Amended Complaint and the documents incorporated by reference therein. *See Kinsey v. New York Times Co.*, 991 F.3d 171, 174 (2d Cir. 2021). The Court assumes these facts are true for the purpose of adjudicating this motion to dismiss. *See, e.g.*, *Kleinman v. Elan Corp., PLC*, 706 F.3d 145, 152 (2d Cir. 2013). The Court construes these facts in the light most favorable to Dr. Marshall Turman as the non-moving party. *See id.*

When Abyssinian's longtime pastor, the Reverend Doctor Calvin O. Butts III, announced his intention to retire, the church formed a committee to find a replacement senior pastor. *See* Am. Compl. ¶ 33. Per Abyssinian's by-laws, when the office of pastor becomes vacant, the Diaconate shall convene a group of no more than seventeen of the church's members in good standing to serve as the "pulpit search committee." *Id.* ¶ 34. But it was Dr. Butts, not the Diaconate, who selected the congregants tasked with finding his replacement. *Id.* ¶ 35. And the committee was ultimately comprised of twenty-seven, not seventeen or fewer, members. *Id.* Dr. Marshall Turman alleges that Dr. Butts involved himself in the appointment of the committee's members to ensure that Abyssinian's new senior pastor was a man. *See id.* Defendant Grant chaired the pulpit search committee. *Id.* ¶ 10.

Abyssinian began accepting applications for senior pastor in August 2022. *Id.* ¶ 40. In the post announcing the opening and describing the job, the church guaranteed that "The Abyssinian Baptist Church in New York City Inc. shall not discriminate on the basis of race, color, religion, gender, age, or sexual orientation." *Id.* ¶ 41. This promise not to discriminate aligned with the church's Baptist faith tradition and with its bylaws. Gender-based discrimination is neither a

component of the Baptist faith practiced at Abyssinian, nor is it a tenet of Baptism more broadly. *Id.* ¶ 36. And Abyssinian's by-laws open the church's membership to "all persons of discretionary age, without restriction as to race or color or gender . . . ." *Id.* ¶ 37. The by-laws impose no prohibition on women serving as the church's senior pastor, requiring only that the person holding the position be a "member of good standing in the Baptist faith, of good reputation and qualified, spiritually, educationally, morally and physically to serve the Membership." *Id.* ¶ 38. Relying on the church's antidiscrimination guarantees, Dr. Marshall Turman applied to be Abyssinian's senior pastor. *Id.* ¶¶ 42, 45.

When she submitted her application, Dr. Marshall Turman had a longstanding relationship with Abyssinian. *See id.* ¶¶ 16-17. Under Dr. Butts's leadership, Abyssinian licensed her to preach in 2005 and ordained her in 2007. *Id.* She also served in various leadership positions in the church between 2003 and 2012, most notably as Assistant Minister from 2010 to 2012 (approximately ten years before the search for senior pastor in 2022).³ *Id.* ¶ 20. Dr. Marshall Turman also held two graduate degrees from Union Theological Seminary—a Master of Divinity degree in Christian Social Ethics with a minor in African-American Religion and a Doctor of Philosophy degree in Christian Ethics with a minor in Systematic Theology—and had worked in religious academia for approximately ten years at the time she applied.⁴ *Id.* ¶¶ 15, 18, 21. Dr. Butts purportedly once described Dr. Marshall Turman as "the best minster [he] ever had" and as "the smartest minister

---

³ At Abyssinian, Dr. Marshall Turman previously served as: Intern Minister for Christian Education (2002-2004), Assistant Minister for Youth (2005-2007), Dean of the Abyssinian Institute for Christian Education (2005-2012), Assistant Minister for Christian Education (2007-2010), and Assistant Minister (2010-2012). *Id.* ¶ 20. She was the youngest woman to ever be named Abyssinian's Assistant Minister, and she was only the second woman to preside over Abyssinian's ordinances since the church was founded in 1808. *See id.* ¶¶ 25, 30.

⁴ Plaintiff held positions at Hood Theological Seminary, Duke University, and Yale University. *Id.* ¶ 21.

[he has] ever had." *Id.* ¶ 32. But despite these accolades, Dr. Marshall Turman alleges that Dr. Butts also told her she could never be senior pastor because Abyssinian would never hire a woman for the position. *Id.*

Approximately fifty people applied to succeed Dr. Butts as Abyssinian's next senior pastor. *Id.* ¶ 45. In early 2023, Abyssinian informed Dr. Marshall Turman that she had advanced to the second round of the selection process, which consisted of answering ten written questions. *Id.* ¶ 46. That summer, the church told Dr. Marshall Turman she was one of eleven applicants selected to advance to the third round of the process, which consisted of interviews conducted over Zoom. *Id.* ¶ 47.

Of the eleven applicants who advanced to the third round of the selection process, Dr. Marshall Turman was the only female candidate. *Id.* ¶ 48. During the interview, Grant asked her questions and pressed her on topics in a way that differed from how the male applicants had been treated. *See id.* ¶ 50. The disparity was glaring enough for at least one committee member to characterize Grant's questions as "inappropriate" in a conversation with Dr. Marshall Turman the day after her interview. *Id.* ¶ 52. Nonetheless, that committee member told her that she did well during the interview and that some members of the committee did not know why a search was even necessary given that she was the best candidate for the senior pastor position. *Id.*

Other committee members had a different view. During meetings, Grant and other committee members openly discussed their intention to exclude Dr. Marshall Turman from consideration for the role because of her gender. *Id.* ¶ 54. One member said that Abyssinian would only hire a woman to be its senior pastor "over [their] dead body." *Id.* The committee members in favor of hiring Dr. Marshall Turman did not want her to be told that she would not be proceeding to the next round of the selection process, and they asked whether Abyssinian's insurance would protect the church from liability for illegal discrimination. *Id.* ¶ 55. But Grant—without providing

4

the dissenters with advance notice, and without being authorized by the full Committee—informed Dr. Marshall Turman that she had been eliminated from consideration to be Abyssinian's next senior pastor. *Id.* ¶ 56.

The five finalists who advanced to the next round were all male, and Dr. Marshall Turman alleges that none were more qualified than she was.[5] *Id.* ¶ 58. Dr. Marshall Turman took to social media to air her grievances, writing that Abyssinian's decision not to advance her to the next round of consideration (and ultimately not to hire her as senior pastor) was attributable to illegal gender discrimination. *Id.* ¶ 59. After reading the social media posts, several committee members approached Dr. Marshall Turman's husband and corroborated her theory that she had been eliminated from consideration because she is a woman. *Id.* ¶ 60. And community members who discussed the selection process with one or more committee members also approached Dr. Marshall Turman and/or her husband to say the same. *Id.* ¶ 61.

Dr. Marshall Turman claims that, but for her gender, the committee would have advanced her to the final round of the application process, and she would have ultimately been selected to be Abyssinian's senior pastor. She seeks: monetary damages for, *inter alia*, lost wages, lost benefits, shame, humiliation, embarrassment, and mental distress; instatement into the senior pastor position or front pay; an award of attorney's fees; punitive damages; prejudgment interest and costs; and an injunction against Defendants engaging in future gender discrimination in hiring. *Id.* ¶ 84.

---

[5] Although the Court assumes the allegations in the Complaint are true for purposes of this motion, the Court acknowledges that Defendants dispute this assertion. *See, e.g.*, Defs.' Mem. Supp. Mot. to Dismiss 1, ECF No. 19 ("Because Plaintiff felt entitled to the position, she could not accept the fact that there were other more qualified candidates."); *cf. id.* 3 ("[I]t has been more than 12 years since she even held a ministerial position.").

**LEGAL STANDARDS**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "In assessing the complaint, [a court] must construe it liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiff[ʼs] favor." *Id.* at 106-07. However, the court must disregard any "conclusory allegations, such as 'formulaic recitations of elements of a cause of action.'" *Id.* at 107 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

**DISCUSSION**

**A. Employment Discrimination Claim Against Abyssinian**

Defendants argue that Dr. Marshall Turman's employment discrimination claim against Abyssinian is barred by the First Amendment's "ministerial exception," a doctrine prohibiting courts from interfering with "the employment relationship between a religious institution and one of its ministers." *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171, 180 (2012). As the Supreme Court explained in *Hosanna-Tabor*, "[t]he interest of society in the enforcement of employment discrimination statutes is undoubtedly important. But so too is the interest of religious groups in choosing who will preach their beliefs, teach their faith, and carry out their mission." *Id.* at 196. Under the ministerial exception, a "church must be free to choose those who will guide it on its way." *Id.*

The ministerial exception is not a categorical prohibition on employment discrimination claims against churches and other religious organizations. But in some circumstances, the exception provides religious organizations with an "affirmative defense to an otherwise cognizable [employment discrimination] claim," *id.* at 195 n.4, out of fidelity to the First Amendment's

6

Establishment and Free Exercise Clauses. Under the ministerial exception, "those properly characterized as 'ministers' are flatly barred from bringing employment-discrimination claims against the religious groups that employ or formerly employed them," *Fratello v. Archdiocese of N.Y.*, 863 F.3d 190, 202-03 (2d Cir. 2017), as well as against their *prospective* employers, *see id.*; *see also Brandenburg v. Greek Orthodox Archdiocese of North America*, No. 20 Civ. 3809, 2021 WL 2206486, at *4 (S.D.N.Y. June 1, 2021) ("There is no dispute that the exception 'flatly bar[s]' claims arising from, or relating to, 'tangible employment actions'—such as *hiring*, firing, promoting, deciding compensation, job assignments, and the like." (citing *Fratello*, 863 F.3d at 202-03) (emphasis added)). Both federal and state employment discrimination claims are barred under the ministerial exception. *Id.* at *3 n.3.

Many employment discrimination cases against religious organizations turn on whether the plaintiff was properly characterized as a "minister" such that she is barred from bringing suit. *See, e.g., Hosanna-Tabor*, 565 U.S. at 190–92. Here, however, neither party disputes that Dr. Marshall Turman was a minister seeking to perform ministerial duties for Abyssinian, or that Abyssinian is a "religious institution" that can raise the ministerial exception as a defense. Instead, Dr. Marshall Turman says that her claim is not barred by the ministerial exception for other reasons—namely, because Abyssinian waived the exception and because it would be premature to apply the exception at this stage of litigation. The Court considers these issues in turn below.

1. **Waiver**

"[A] waiver of constitutional rights in any context must, at the very least, be clear." *Fuentes v. Shevin*, 407 U.S. 67, 95 (1972). "[A]ny such waiver must be made 'voluntarily, knowingly, and intelligently,'" and "[t]he waiver must be established by 'clear and compelling' evidence." *Legal Aid Soc'y v. City of New York*, 114 F. Supp. 2d 204, 226-27 (S.D.N.Y. 2000) (first quoting *Doe v. Marsh*, 105 F.3d 106, 111 (2d Cir. 1997); then quoting *Curtis Publ'g Co. v.*

7

*Butts*, 388 U.S. 130, 145 (1967)). "Courts must indulge every reasonable presumption against waiver of fundamental constitutional rights." *Doe*, 105 F.3d at 111.

Neither the Supreme Court nor the Second Circuit has addressed whether the First Amendment's ministerial exception may be waived. Were this issue dispositive, this Court would have occasion to resolve the parties' competing interpretations of out-of-circuit cases purporting to state that the doctrine is (or is not) waivable. But the Court need not decide that constitutional question to resolve this motion, because even assuming that the ministerial exception *may* be waived, there was no such waiver here. *Cf. Allstate Ins. Co. v. Serio*, 261 F.3d 143, 149-50 (2d Cir. 2001) ("It is axiomatic that the federal courts should, where possible, avoid reaching constitutional questions."). Based on the record before the Court—namely, the text of Abyssinian's written notice and job description for the senior pastor position and the church's by-laws—the Court cannot conclude that Abyssinian waived its First Amendment right to be immune from employment discrimination lawsuits.[6]

With respect to the by-laws, the Court credits Abyssinian's explanation that the provision of the church's by-laws Dr. Marshall Turman attempts to use to support her claim refers to criteria for *membership* in the congregation broadly, not to the criteria for selecting the church's senior pastor. Put differently, Abyssinian's mandate that membership in the church is "open to all persons . . . without restriction as to . . . gender," Am. Compl. ¶ 37, does not waive the ministerial exception because the statement is unrelated to the hiring process for the senior pastor position. Therefore, the sole issue before the Court is whether the statement in the written notice and job description

---

[6] In her opposition, Dr. Marshall Turman appears to predicate her waiver claim only on the antidiscrimination statement from the job description, not on any representation made in the by-laws. "Pl.'s Opp'n" 11-13. However, in the interest of completeness, the Court considers both the job description and the by-laws.

for the senior pastor position—"The Abyssinian Baptist Church in New York City Inc. shall not discriminate on the basis of . . . gender"—constitutes waiver of the ministerial exception. Pl.'s Mem. Opp'n Mot. to Dismiss ("Pl.'s Opp'n") 6, ECF No. 20.

Dr. Marshall Turman argues that it does, characterizing the language in the senior pastor job description as a "voluntary, declared policy against gender discrimination," and stating that it constitutes waiver because it was "unambiguous, specific, and directly related to hiring for the senior pastor position." *Id.* at 2, 13. But Abyssinian points to several persuasive, albeit out-of-circuit, decisions holding that a defendant's general antidiscrimination policy, and its statements about such a policy, do not constitute waiver of the ministerial exception. *See* Defs.' Mem. Supp. Mot. to Dismiss ("Defs.' Mem.") 14-16. For example, in *Grussgott v. Milwaukee Jewish Day Sch., Inc.* the Seventh Circuit held that the defendant's antidiscrimination policy "expressly barring discrimination on the basis of religion, as well as race, gender, and sexual orientation," "d[id] not constitute a waiver of the ministerial exception's protections" because "a religious institution does not waive the ministerial exception by representing itself to be an equal-opportunity employer." 882 F.3d 655, 656, 658 (7th Cir. 2018). And in *Petruska v. Gannon Univ.*, the Third Circuit held that the defendant's "repeated[] and public[] representation of itself as an equal opportunity employer" did not constitute a waiver of the ministerial exception. 462 F.3d 294, 308-309 (3d Cir. 2006). Observing that "[c]ourts indulge every reasonable presumption against waiver of fundamental constitutional rights," the *Petruska* court determined that, in "invoking the 'equal opportunity' language, [the defendant] acknowledged only that it would comply with [an antidiscrimination statute] to the extent the statute applie[d] to its employment decisions," but that the statute did not apply in that case because plaintiff's alleged adverse employment action was based on defendant's "decision about who would perform spiritual functions and about how those functions would be divided." *Id.* at 309, 307-08.

9

Dr. Marshall Turman attempts to distinguish those precedents from this case by stating that, unlike the antidiscrimination guarantees at issue in *Grussgott* and *Petruska*, Abyssinian's promise "was not a generalized statement that Abyssinian was an equal-opportunity employer [but] instead a specific declaration by Abyssinian voluntarily acknowledging a self-imposed policy not to discriminate against members of protected categories including gender." Pl.'s Opp'n 10-11. Abyssinian's non-discrimination guarantee, she says, was "*specific to the Senior Pastor position* and the very hiring process at issue." *Id.* at 11. Dr. Marshall Turman's argument appears to be that, by virtue of appearing on the written notice and job announcement, the non-discrimination policy language constituted a statement specifically about the position being advertised, and therefore constituted waiver of the ministerial exception. *See* Am. Compl. ¶ 41 (alleging that Abyssinian's antidiscrimination guarantee was made "in the written notice and job description for the Senior Pastor position").

Though this is a somewhat close case, the Court ultimately concludes that the antidiscrimination language cited by Dr. Marshall Turman is not sufficiently clear to find a waiver. In adjudicating a motion to dismiss, this Court "must take all of the factual allegations in the complaint as true." *Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctr. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717 (2d Cir. 2013) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)). The Court therefore takes as true Dr. Marshall Turman's allegation that Abyssinian's non-discrimination policy statement appeared in the written notice and job description for the Senior Pastor position. But while this is a close case, the Court ultimately concludes that, in light of the presumption against the waiver of constitutional rights, the inclusion of a boilerplate antidiscrimination statement on a religious organization's written notice and job announcement does not, on its own, constitute a waiver of constitutional rights sufficient to subject that organization to liability under antidiscrimination statutes. Abyssinian's

10

announcement contains a statement parallel in substance to that in the church's by-laws, which, as explained *supra*, express its commitment to inclusion in its *membership* irrespective of, *inter alia*, gender. But the statement does not contain any words or phrases suggesting that Abyssinian sought to waive its First Amendment rights in hiring—thus binding itself to applicable antidiscrimination laws. Such a clear indication is necessary where, as here, liability is predicated on a waiver of constitutional rights.

In cases regarding waiver in the civil context, an individual or organization is generally not found to have waived its constitutional right without an explicit statement. *See, e.g.*, *Legal Aid*, 114 F. Supp. 2d at 227 (holding no waiver of First Amendment rights where, *inter alia*, contract neither mentioned nor explicitly waived them); *cf. Curtis Publ'g Co.*, 388 U.S. at 145 (rejecting plaintiff's argument that defendant waived First Amendment rights given absence of "knowing" waiver and "clear and compelling" evidence); *Miller v. N.Y.C. Dep't of Educ.*, 71 F. Supp. 3d 376, 380 (S.D.N.Y. 2014) (finding waiver of, *inter alia*, First Amendment rights where plaintiff "knowingly and voluntarily" signed release that was "clear and unambiguous on its face"). Here, the boilerplate antidiscrimination statement does not clearly indicate Abyssinian's waiver of its First Amendment rights under the ministerial exception with respect to the senior pastor role. The statement says nothing about the church's rights or possible legal liability. It is too generic to constitute an abandonment of the church's entitlement to a ministerial exception defense, at least under the facts as alleged here. [7]

---

[7] The Court acknowledges that Dr. Marshall Turman's case is not an easy one. But the Court has been unable to find a single case where a religious organization was found to have clearly waived its ministerial exception-based defense via an antidiscrimination statement. It remains an open question as to what precisely such a statement must say to constitute waiver. Moreover, the Court notes an additional potential wrinkle: The protections of federal, state, and city antidiscrimination protections vary, which means that, in some cases, conduct may trigger liability under, say, the NYCHRL but not Title VII. *See, e.g.*, *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (observing that "courts must analyze NYCHRL claims separately

To be sure, one might question the propriety of an organization holding itself out as an equal opportunity employer and reaping the public relations benefits of that self-description, only to turn around and say that it is immune from liability under antidiscrimination statutes when someone alleges that the organization has unlawfully discriminated.  But in this case specifically, mindful of the presumption against waiver and having carefully evaluated the antidiscrimination statement on the job posting, the Court concludes that the statement on the job posting does not clearly demonstrate that Abyssinian waived its First Amendment rights.  Therefore, the ministerial exception was not waived, and it bars Dr. Marshall Turman's employment discrimination claims.

### 2.  Whether Applying the Ministerial Exception is Premature.

Having found that Abyssinian did not waive the ministerial exception by adding antidiscrimination language to the senior pastor job description, the Court now turns to the sole remaining question: May Abyssinian raise the ministerial exception as a defense to Dr. Marshall Turman's employment discrimination claim[8] at the motion to dismiss stage?

Dr. Marshall Turman advances two interrelated points regarding Abyssinian's invocation of the ministerial exception at this stage of the litigation.  She argues that the nature of her claims

---

and independently from any federal and state law claims, . . . construing the NYCHRL's provisions broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible. . . .  Thus, even if the challenged conduct is not actionable under federal and state law, federal courts must consider separately whether it is actionable under the broader New York City standards.").  Assuming waiver of the ministerial exception is possible, it is unclear to the Court whether a religious organization can waive it for some but not all statutes. The Court does not attempt to answer these questions today, given its determination that the statement at issue is not sufficiently clear so as to overcome the presumption against waiver.

[8] Dr. Marshall Turman appears to assert the ministerial exception's prematurity only with respect to her contract claim (and not her discrimination claim).  *See* Pl.'s Opp'n 11 ("Because Abyssinian *promised* that it would not discriminate in making this hiring decision, church doctrine or dogma is irrelevant[.]") (emphasis added); *id.* at 14 ("Abyssinian made a *guarantee* that it would not discriminate on the basis of gender.") (emphasis added).  However, in the interest of completeness, the Court analyzes the exception's prematurity with respect to both of her claims.

against the church are such that this Court need not intrude into ecclesiastical matters to resolve this suit. Pl.'s Opp'n 10-11. Thus, she says, dismissal at this stage of litigation based on the ministerial exception would be premature. *Id.* at 14-15.

Dr. Marshall Turman is correct that, in certain contexts, the ministerial exception is inapposite. The exception is limited in scope and does not shield defendant-churches from *all* types of claims. *See Minker v. Balt. Ann. Conf. of United Methodist Church*, 894 F.2d 1354, 1360 (D.C. Cir. 1990) ("[T]he first amendment does not immunize the church from all temporal claims made against it."). Courts decline to apply the ministerial exception at the motion to dismiss stage when doing so would be premature, such as when a court need not entangle itself with religion in order to adjudicate the claim. *See id.* at 1360 (finding ministerial exception premature with respect to contract claim because claim's adjudication did not necessarily require court's entanglement); *Petruska*, 462 F.3d at 312 (same). Therefore, even in a suit against a church, so long as a plaintiff can show "that *some* form of inquiry is permissible and *some* form of remedy is available," her claim can "survive a motion to dismiss." *Minker*, 894 F.2d at 1360.

But employment discrimination claims against churches require special solicitude. By their very nature, these claims routinely pose a substantial entanglement concern. Accordingly, courts routinely apply the ministerial exception to bar them at the motion to dismiss stage. *Id.* at 1356-1357 ("[D]etermination of 'whose voice speaks for the church' is *per se* a religious matter. We cannot imagine an area of inquiry less suited to a temporal court for decision[.]"). Courts have framed the entanglement flowing from discrimination-in-employment claims in two distinct ways: as remedy-based or inquiry-based. The remedy-based entanglement arises because the plaintiff essentially asks the court to interfere in a church's hiring process by thrusting an unwanted minister upon the church. *Hosanna-Tabor*, 565 U.S. at 188 ("By imposing an unwanted minister [on a church], the state infringes the Free Exercise Clause, which protects a religious

13

group's right to shape its own faith and mission through its appointments."); *Minker*, 894 F.2d at 1357 ("Not only may a church adopt its own idiosyncratic reasons for appointing pastors, but also it has a legitimate claim to autonomy in the elaboration and pursuit of that goal."). The inquiry-based entanglement arises where the court—in order to assess the plaintiff's claim that the defendant's proffered, legitimate reason for taking the adverse employment action is merely a pretext for discrimination—must determine the plausibility of such proffered reasons, which in turn requires the court to inquire into a forbidden area: church doctrine. *See Petruska*, 462 F.3d at 304 n.7 (collecting cases); *Cath. High Sch. Ass'n of Archdiocese of N.Y. v. Culvert*, 753 F.2d 1161, 1168 (2d Cir. 1985) ("[T]he First Amendment prohibits the State Board from inquiring into an asserted religious motive to determine whether it is pretextual."); *Rweyemamu v. Cote*, 520 F.3d 198, 209 (2d Cir. 2008) (explaining that claimant "must argue that the decision of the Congregatio Pro Clericis was not only erroneous, but also pretextual. Such an argument cannot be heard by us without impermissible entanglement with religious doctrine"); *Minker*, 894 F.2d at 1360 ("[A]ny inquiry into the Church's reasons for asserting that Minker was not suited for a particular pastorship would constitute an excessive entanglement in its affairs."); *id.* at 1357 ("[E]valuation of the 'gifts and graces' of a minister must be left to ecclesiastical institutions.").

Here, Dr. Marshall Turman's claim necessarily gives rise to both types of entanglement. The remedy-based entanglement arises because she seeks, among other remedies, "instatement into the Senior Pastor position for which [she] was not hired." Am. Compl. ¶ 84(b). The allegations in the Amended Complaint make clear that Abyssinian did not wish for Dr. Marshall Turman to serve as its senior pastor in 2022, and there is no indication that it wants her to serve in that role now, three years later. *Id.* ¶¶ 42-57. Such is the church's prerogative. "[T]he authority to select and control who will minister to the faithful—a matter 'strictly ecclesiastical'—is the church's alone." *Hosanna-Tabor*, 556 U.S. at 195.

14

Even if Dr. Marshall Turman sought only money damages, her discrimination claim would still give rise to an impermissible inquiry-based entanglement. Dr. Marshall Turman argues that Abyssinian did not hire her because of her gender. In response, Abyssinian argues that it did not hire her because she was not qualified for the position. *See* Defs.' Mem. 1 ("Abyssinian's Pulpit Search Committee . . . concluded that Plaintiff—who never served as a pastor or even an assistant pastor of a church and spent the last 12 years in academia—lacked the necessary pastoral experience for a job as complex and challenging as leading an institution with the size and profile of Abyssinian."); *id.* ("[T]here were other more qualified candidates."); *cf. id.* at 3 ("Plaintiff's own allegations, if true, establish that her academic credentials far outstrip her ministerial credentials as well as her non-existent pastoral credentials"). To determine whether Abyssinian's proffered reason for declining to hire Dr. Marshall Turman—her lack of qualifications—is pretextual, the Court would have to engage in exactly the type of inquiry-based entanglement from which this Court is prohibited. Under the Establishment and Free Exercise Clauses, it is not the business of this Court to question or otherwise look beyond Abyssinian's stated reasons for finding Dr. Marshall Turman unqualified to serve as its senior pastor.

There is no way for this Court to resolve Dr. Marshall Turman's employment discrimination claim without becoming entangled with Abyssinian's ecclesiastical innerworkings. It is therefore not premature to apply the ministerial exception at the motion to dismiss stage of this litigation. Accordingly, because the ministerial exception applies, Dr. Marshall Turman's employment discrimination claim against Abyssinian is dismissed.

### B. Breach of Contract Claim Against Abyssinian

In addition to her employment discrimination claims, Dr. Marshall Turman also alleges that Abyssinian breached an implied contract with her when it allegedly removed her from consideration for the senior pastor position because she is a woman. *See* Am. Compl. ¶¶ 74-84.

Dr. Marshall Turman says she applied for the job based on the church's "express written by-law limiting its right to discriminate and [its] written guarantee that Abyssinian would not discriminate on the basis of . . . gender . . . in hiring a new Senior Pastor"—promises that, she says, created a "contractual duty and obligation" "to take all reasonable and practical steps to protect her from discrimination." *Id.* ¶¶ 75, 77, 78.  Because "[t]he by-laws and guarantee against discrimination contain no disclaimer to the effect that the policy was not intended to create a contract []or . . . contain any express statement that a member cannot bring a breach-of-contract claim based upon a breach of its guaranteed protections," Dr. Marshall Turman says that Abyssinian can be sued for breach of contract for discriminating against her and is liable for damages.  *See id.* ¶¶ 81, 84.

Setting aside that the antidiscrimination provision of Abyssinian's by-laws explicitly refers to *membership* in the church's congregation and is, therefore, irrelevant to the issue of whether the Church promised not to discriminate in the hiring process for the senior pastor role, Dr. Marshall Turman's breach of contract claim still fails because it is barred by the ministerial exception.  *See id.* ¶¶ 37, 38.

There are situations where courts have found that it was premature to apply the ministerial exception to bar a plaintiff's contract claim at the motion to dismiss stage.  For example, in *Minker*, a minister brought a contract claim against his church, alleging that his superintendent had broken an oral promise to give him a more suitable pastorship.  *Minker*, 894 F.2d at 1355.  The D.C. Circuit found that the plaintiff's ability to prove up his contract claim did not necessarily require "impermissible avenues of discovery or remedies," but rather hinged on "a fairly direct inquiry into whether [claimant's] superintendent promised him a more suitable congregation, whether [claimant] gave consideration in exchange for that promise, and whether such congregations became available but were not offered to [claimant]."  *Id.* at 1360.  Specifically, the D.C. Circuit stated:

16

> It could turn out that in attempting to prove his case, appellant will be forced to inquire into matters of ecclesiastical policy even as to his contract claim. Of course, in that situation, a court may grant summary judgment on the ground that appellant has not proved his case and pursuing the matter further would create an excessive entanglement with religion. On the other hand, it may turn out that the potentially mischievous aspects of Minker's claim are not contested by the Church or *are subject to entirely neutral methods of proof*. The speculative nature of our discussion here demonstrates why it is premature to foreclose appellant's contract claim. Once evidence is offered, the district court will be in a position to control the case so as to protect against any impermissible entanglements.

*Id.* (emphasis added). Accordingly, the D.C. Circuit held that the claimant "is entitled to prove up his claim of breach of an oral contract *to the extent that he can divine a course clear of the Church's ecclesiastical domain*." *Id.* at 1361 (emphasis added).

Similarly, *Petruska* involved a former chaplain bringing a contract claim against a religious college, alleging that the college, by changing her responsibilities, breached its contractual promise to allow her to serve in a particular position. 462 F.3d at 310. Like the D.C. Circuit in *Minker*, the Third Circuit held that it was premature to apply the ministerial exception to bar the plaintiff's contract claim, reasoning that:

> [Plaintiff's] breach of contract claim does not inevitably or even necessarily lead to government inquiry into [Defendant's] religious mission or doctrines. Resolution of this [contract] claim does not turn on an ecclesiastical inquiry—or, at least not at the outset. If [Defendant's] response to [Plaintiff's] allegations raise issues which would result in excessive entanglement, the claims may be dismissed on that basis on summary judgment.

*Id.* at 312.

Dr. Marshall Turman argues that here, as in *Minker* and *Petruska*, it is premature to apply the ministerial exception to bar her breach of contract claim. *See* Pl.'s Opp'n 14-15. But this case is distinguishable from *Minker* and *Petruska*. Here, the promise at issue was not one to provide a particular role or position for Dr. Marshall Turman that Abyssinian agreed was suitable for her (as in *Minker* and *Petruska*), an issue that a court could (theoretically) adjudicate without becoming entangled with Abyssinian's ecclesiastical mission. Rather, the alleged promise was to refrain

17

from discriminating in the hiring of Abyssinian's new senior pastor. But to prove a breach of this promise, Dr. Marshall Turman would need to prove that Abyssinian eliminated her from consideration because she is a woman and not, as the church contends, because she was not qualified for the role. Considering that question would involve the same inquiry-based entanglement that compels this Court to dismiss, on ministerial exception grounds, her employment discrimination claim.

Accordingly, this Court agrees with Abyssinian that Dr. Marshall Turman "cannot evade the ministerial exception by asserting a contract claim based upon the same underlying facts as her statutory discrimination claims," Defs.' Mem. 12. The ministerial exception, therefore, bars Dr. Marshall Turman's contract claim, and it is dismissed.

### C. Employment Discrimination Claim Against Grant

Dr. Marshall Turman also seeks to hold Grant, as the chairperson of the Pulpit Search Committee, individually liable for employment discrimination under both NYSHRL and NYCHRL. *See* Am. Compl. ¶¶ 10, 11, 50, 54, 63. But because the ministerial exception prevents this employment discrimination suit from proceeding against Abyssinian, it also requires this Court to dismiss the claims against Grant. That is, because the First Amendment prohibits religious organizations from being sued under antidiscrimination laws regarding ministerial roles, it similarly prohibits those organizations' agents from being sued under the same laws. Thus, in cases where a plaintiff sues both a religious organization and an affiliated individual—say, a church and a faith leader—courts find that the ministerial exception bars the action in its entirety, not just with respect to the institution. *See, e.g.*, *Rweyemamu*, 520 F.3d at 210 (affirming district court's dismissal of employment discrimination claim against church and one of its bishops based on ministerial exception); *Hankins v. N.Y. Ann. Conf. of United Methodist Church*, 351 F.App'x. 489, 491 (2d. Cir. 2009) (per curiam) (same); *Penn v. N.Y. Methodist Hosp.*, 884 F.3d 416, 429

(2d Cir. 2018) (affirming district court's dismissal of employment discrimination claim against religiously affiliated hospital and individual supervisor based on ministerial exception); *cf. Brandenburg*, 2021 WL 2206486 (analyzing various employment discrimination claims without distinguishing individual clergy member defendants from institutional archdiocese defendant). So too here. Because the ministerial exception bars Dr. Marshall Turman's employment discrimination claims against Abyssinian, it also shields Grant from liability under the same cause of action. Therefore, the claims against Grant are dismissed.

## CONCLUSION

For the reasons stated above, Dr. Marshall Turman's Amended Complaint is **DISMISSED**. The Clerk of Court is respectfully requested to terminate ECF No. 17.

SO ORDERED.

Dated: March 31, 2025

New York, New York

_____
DALE E. HO
United States District Judge
